IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. JUSTICE and MIKE WOODWARD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06 C 1108 Wayne R. Andersen District Judge |
| TOWN OF CICERO, DENNIS DOE, JERRY JAROSZ, and One to Two Dozen Unknown Other Employees of the Town of Cicero, in their individual and official capacities. | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs John Justice and Mike Woodward filed this lawsuit against the Town of Cicero, Dennis Doe, Jerry Jarosz, and one or two dozen other unidentified Town employees, alleging civil rights violations pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs also assert an antitrust claim against the Town and seek a declaratory judgment and injunctive relief. Defendants filed a motion to dismiss all counts of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, we grant the motion.

## BACKGROUND

On February 24, 2006, Town of Cicero police officers served an administrative search warrant at a business owned by Plaintiff John Justice. The warrant had been issued that day by a Cook County Circuit Court judge who found that there was probable cause to believe that Justice may be violating as many as nine Town ordinances. The warrant was granted primarily based on information contained in an affidavit submitted by Larry Hippert, a Town business license and building inspector. Hippert claimed, among other things, that Justice had failed to apply for a business license, that he believed Justice was using a chemical solvent inside the building, that

Justice had violated an administrative judge's February 16, 2006, order to let Town inspectors onto the premises, and that the health and safety of the community was at risk if Justice was improperly storing, using, and/or disposing of chemical solvents. Plaintiff Justice admits that, at the time the warrant was issued, he was operating a business in the Town without a license, asserting that he had a constitutional right to do so. During the execution of the search warrant, police officers found and seized six unregistered handguns belonging to Plaintiff Justice. They arrested Justice and issued him six tickets for violating the Town's firearms registration ordinance.

On February 8, 2007, Plaintiffs filed a third amended complaint against the Town, Dennis Doe, Jerry Jarosz, and one or two dozen other unidentified Town employees. Count I alleges civil rights violations pursuant to 42 U.S.C. § 1983 in violation of Plaintiffs' Second, Fourth, and Fourteenth Amendment rights. Count II seeks a declaration that the Town's business licensing ordinance is unconstitutional. Count III asserts an antitrust claim against the Town for the operation of its water department. And Count IV requests that the court appoint a receiver to review the billing practices, imposition of late fees, and expenditures of the Town's water and business licensing departments. Defendants filed a motion to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

**LEGAL STANDARD**

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Under Fed. R. Civ. P. 8(a)(2), a complaint need only contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." The Supreme Court recently interpreted that language to impose two minimal hurdles. "First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs.*, 2007 U.S. App. LEXIS 18487, at *6 (7th Cir. Aug. 3, 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the complaint's allegations "must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra Health*, 2007 U.S. App. LEXIS 18487, at *6 (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14).

## DISCUSSION

### I. *Plaintiff Mike Woodward's Claim*

In Count I, Plaintiff Mike Woodward, a 24-hour security guard at Plaintiff Justice's business, alleges that the Town's police officers violated his civil rights the day the officers served the administrative search warrant. Woodward alleges that he was awakened from a nap by the commands of the police officers who had the laser sights on their weapons pointed at his eyes. To state a claim under Section 1983, two elements are necessary: (1) the plaintiff must prove that the defendant deprived him of a right secured by the "Constitution and laws" of the United States; and (2) the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). In the third amended complaint, Plaintiff Woodward is mentioned only briefly and only in Count I. Woodward claims he is entitled to relief under Section 1983 because he "suffered the start of his

3

life" when he woke up and found the police officers with their guns pointed in his direction. The complaint alleges that "[t]he officers intended to fire the weapons if he moved mere inches." The rest of the complaint deals exclusively with issues raised by Justice.

We presume Woodward is alleging excessive force by the police officers, but the complaint does not allege any facts to support such a claim. Thus, we dismiss Woodward's claim under Count I. The rest of this opinion will focus on Justice's claims.

## II. Section 1983 Municipal Liability

Count I of Justice's complaint alleges a Section 1983 violation against all of the defendants, jointly and severally, including the Town. Specifically, the complaint alleges that Defendants "violated federally protected constitutional rights against unreasonable and illegal searches and seizures, under the 2nd, 4th, and 14th Amendments of the Constitution, protected by the Bill of Rights and 42 U.S.C. Section 1983." The doctrine of *respondeat superior* cannot be used to hold local governmental entities liable for Section 1983 violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Monell*, the Supreme Court stated:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694. Therefore, a local government "is only responsible for its employees' actions if taken pursuant to an unconstitutional policy or custom of the municipality itself," *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999), or when a "valid policy is unconstitutionally applied by a municipal employee" who has not been adequately trained and the "constitutional wrong has been caused by that failure to train." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). A policy or custom can take one of three

4

forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority." *Garrison*, 165 F.3d at 571-72.

In this case, Plaintiff's complaint states that the Town's business license and firearms registration ordinances are unconstitutional on their face or as applied to him. Defendants argue that the Town's ordinances are not unconstitutional, and, therefore, Plaintiff cannot state a valid Section 1983 claim. We agree with Defendants.

### A. The Town's Business License Ordinances

The Town of Cicero has home-rule powers. Article VII, § 6(a) of the Illinois Constitution provides:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. CONST. art. VII, § 6(a). Home rule units have the same powers as the sovereign, except when such powers are limited by the General Assembly. *City of Urbana v. Houser*, 367 N.E.2d 692, 694 (Ill. 1977). Powers and functions of home rule units are to be construed liberally. Ill. CONST. art. VII, § 6. In 65 ILCS 5/11-60-1, the Illinois legislature explicitly granted municipalities the power to issue and revoke licenses.

When a home rule unit has the power to regulate, it also has the power to license. *Cicero v. Weilander*, 183 N.E.2d 40, 45 (Ill. App. Ct. 1962). Government officials grant licenses to a) confer a right or power which does not exist without it, b) regulate and control an occupation or privilege for which the license is granted so as to serve the

5

public good, c) prevent an occupation or privilege from being conducted in a manner injurious to the public welfare, or d) raise revenue. *Id*. at 43.

In this case, Plaintiff contends that the business license ordinance is unconstitutional because it is overly broad and because the license is not reasonably tied to any regulatory purpose and is merely a revenue gathering maneuver. The complaint also indicates that Plaintiff had refused to get a business license because he was "an American citizen doing business as a matter of liberty under the Declaration of Independence and the Constitution for the United States of America." Plaintiff's arguments are not persuasive.

First, the wording in the section of the business license provision in question is not overly broad. The provision would not, as Plaintiff contends, force a person who was storing gas in his garage for a lawnmower to obtain a business license "with no business activity taking place at all." On the contrary, Town Code Sec. 26-31 provides in pertinent part that "[n]o person shall engage in or manage or operate any business, profession or occupation within the town unless a town license shall have been procured from the license officer." And Sec. 26-236 provides: "Without first having obtained a license for the operation of such business from the town, no person shall conduct or operate any of the following: (1) Factory; (2) Plant; . . . (4) Manufacturing establishment; . . . (22) Manufacturer of or treatment or distribution or storage of any products of any nature whatsoever." It is this last part that Plaintiff says could force a homeowner with a gas can to be required to obtain a business license. But that one provision cannot be read in isolation. When it is read in the context of the entire section, it is clear that the section pertains to people operating businesses, not individual homeowners with lawnmowers.

Second, Plaintiff's conclusory statement that the Town's business licensing process is merely a "revenue gathering maneuver" is not supported by the facts. The Town's purpose in

regulating businesses and issuing licenses is to protect the general health and welfare of the citizens of the Town. These purposes were exactly what was envisioned by the Illinois legislature when it granted home rule units the power to regulate things such as zoning, health matters, building codes, electrical systems, and nuisances. *See* 65 ILCS 5/11-13-1, 5/11-16-1, 5/11-30, 5/11-31, 5/11-33, and 5/11-60-2.

Because the Town's business license ordinance is not unconstitutional and because the actions of the Town employees in this case were undertaken in an effort to determine whether Plaintiff had a business license and what activity was taking place inside the business, Plaintiff, according to *Monell*, cannot maintain a Section 1983 claim against the Town. *See Garrison*, 165 F.3d at 571. Therefore, that part of Plaintiff's claim in Count I is dismissed and the declaratory judgment sought in Count II that the Town's business license ordinance is unconstitutional is dismissed as well.

### B. The Town's Firearms Registration Ordinance

Cicero's Town Code Sec. 62-260 requires that all firearms in Cicero be registered with the Town. The Second Amendment provides that "[a] well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. But the Second Amendment regulates only the activities of the federal government — not those of the states or their subdivisions. *Quilici v. Village of Morton Grove*, 695 F.2d 261, 269-71 (7th Cir. 1982), *cert. denied*, 464 U.S. 863 (1983).

Article I, § 22 of the Illinois Constitution provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. CONST. art. I, § 22. But an examination of § 22 reveals that an individual's right to bear arms in Illinois is narrow and subject to extensive regulation. *Sklar v. Byrne*, 727 F.2d 633, 637 (7th Cir. 1984).

For example, an individual's right to bear arms is expressly subject to the police power. "Section 22 thus gives the state and municipalities wide latitude to regulate the private possession of firearms in order to protect the public health, safety and welfare." *Id.* at 637 (citing *Quilici*, 695 F.2d at 267; *Kalodimos v. Village of Morton Grove*, 447 N.E.2d 849, 852 (Ill. 1983). Moreover, the Illinois Supreme Court has held that local ordinances requiring firearm registration do not violate the Second Amendment because "regulation which does not impair the maintenance of the State's active, organized militia is not in violation of either the terms or the purposes of the second amendment." *Brown v. Chicago*, 250 N.E.2d 129, 131 (Ill. 1969).

Additionally, the Illinois Constitution authorizes local governments to function as home rule units to "exercise any power and perform any function pertaining to its government and affairs." Ill. CONST. art. VIII, § 6(a). "Home rule government is based on the theory that local governments are in the best position to assess the needs and desires of the community and, thus, can most wisely enact legislation addressing local concerns." *Quilici*, 695 F.2d at 267-68 (internal citation omitted).

In this case, while serving an administrative search warrant on Plaintiff's business, Cicero police officers found six unregistered firearms belonging to Plaintiff. Plaintiff was arrested and cited for six counts of failing to register firearms, in violation of Town Code § 62-260. Plaintiff asserts in his complaint that it is a "violation of [his] Second Amendment right to keep and bear arms for the Town of Cicero to regulate and criminalize the mere possession of firearms by a taxpaying property owner" who does business in the Town. He alleges that the Town's firearms ordinance is unconstitutional on its face or as applied to him.

Because the Second Amendment only regulates the activities of the federal government, not municipalities, the Town's firearms ordinance does not violate any federal constitutional

right. *See Quilici*, 695 F.2d at 269-71. And because the Illinois Constitution gives home rule units wide latitude to regulate the private possession of firearms in order to protect the public health, safety, and welfare, the Town's firearms ordinance does not violate the State constitution. *See Sklar*, 727 F.2d at 637. Thus, the Town's firearms ordinance is constitutional, and Plaintiff's claim to the contrary must fail. For these reasons, we grant Defendants' motion to dismiss Plaintiff's Second Amendment claim in Count I.

### III. *Section 1983 Individual Liability*

Count I of Plaintiff's complaint alleges a Section 1983 violation against all of the defendants, jointly and severally, including many Town employees. Only two individual defendants, Dennis Doe and Jerry Jarosz, were named in the complaint. Only Jarosz, the Town's Business License Officer, was served. The complaint seeks to hold the individual defendants liable in both their official and individual capacities.

In *Luck v. Rovenstine*, the Seventh Circuit held that "[i]ndividual capacity claims 'seek to impose individual liability upon a government officer for actions taken under color of state law,'" and that to establish personal liability in a Section 1983 action, the plaintiff must show that the individual defendant "caused the deprivation of a federal right." 168 F.3d 323, 327 (7th Cir. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). A state actor sued in an individual capacity may assert personal immunity defenses. *Luck*, 168 F.3d at 327 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). In order to maintain a valid Section 1983 claim against local officials acting in their official, rather than their individual capacities, a plaintiff must allege that an official policy or custom deprived him of a constitutionally protected right. *Leinberger v. Campion*, 1994 U.S. Dist. LEXIS 9474, at *18 (N.D. Ill. July 12, 1994) (citing *Monell*, 436 U.S. at 690-91).

Additionally, police officers, under the doctrine of qualified immunity, are "shielded from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects an officer who reasonably, but mistakenly, believed that probable cause existed. *Burns v. Reed*, 44 F.3d 524, 529 (7th Cir. 1995).

Plaintiff, in his third amended complaint, does not state why the two named Defendants, Dennis Doe and Jerry Jarosz, should be individually liable. Plaintiff implies that the unidentified Town police officers who executed the search warrant should be individually liable because: (1) they had constructive knowledge that he and his business were in substantial compliance with the Town's building and fire codes; (2) they "worked closely enough" with the building inspector who helped secure the search warrant that they should have known the inspector's affidavit contained alleged falsehoods, conjecture, and inaccuracies; (3) they lacked probable cause to believe the plaintiff and his business were violating the Town's building, fire, and zoning ordinances; and (4) their acts were intentional, willful and wanton.

First, this court will take judicial notice of the fact that a Cook County Circuit Court judge on February 24, 2006, found that there was probable cause to believe that Justice might have beeen violating as many as nine Town ordinances. Thus, the police officers are shielded by qualified immunity because they reasonably believed, based on the judge issuing a warrant, that probable cause existed. *See Burns*, 44 F.3d at 529. Second, Plaintiff's statement that the employees who executed the search warrant acted intentionally, willfully, and wantonly is a conclusion of law, not a statement of fact. And third, assuming any of the other allegations are true, they do not amount to the personal involvement necessary for a finding of individual liability in a Section 1983 case. *See, e.g., Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)

(holding that for an official to be personally responsible under Section 1983, the constitutional deprivation complained of must have occurred at his direction or with his knowledge and consent).

Moreover, in this case there was no constitutional deprivation. The Town had authority to require that Plaintiff have a license to operate his business and register his handguns. And the Town was ordered to execute the search warrant issued by a state court judge. Therefore, there is no Section 1983 liability against any of the individual defendants and all claims against them are dismissed.

## IV. *Antitrust Claim*

In Count III, Plaintiff alleges that the Town's water department rates and billing amount to an antitrust violation. As stated above, Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A complaint attacked by a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, at *1964-65 (2007) (internal citations omitted). Making an allegation or a bare assertion will not suffice. *Id.* at 1966.

A district court must retain the power to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983). The Seventh Circuit has held that "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the

plaintiffs can construct a claim from the events related in the complaint." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 127 S. Ct. 1955, at * 1967 (internal citations omitted).

Additionally, the *Parker Doctrine* exempts States, acting through their legislatures, from antitrust liability arising from anticompetitive conduct. *Parker v. Brown*, 317 U.S. 341, 350-51 (1943). As the Town noted in its motion to dismiss, the *Parker Doctrine* exemption extends to local governments, placing them "beyond the reach of the antitrust laws," if the local governments can demonstrate that their anticompetitive activities are authorized by the State "pursuant to state policy to displace competition with regulation or monopoly public service." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985).

In this case, the Illinois General Assembly has granted local governments, such as the Town of Cicero, the authority to build and operate their own waterworks and to fix and collect water rates or rents as the corporate authorities may deem necessary or expedient. 65 ILCS 5/11-125-3. Moreover, the legislature has codified, by statute, the *Parker Doctrine's* "State action exemption" for local governments that provide and regulate local services:

> The General Assembly intends that the "State action exemption" to application of the federal antitrust laws be fully available to local governments to the extent their activities are either (1) expressly or by necessary implication authorized by Illinois law or (2) within traditional areas of local government activity . . . .
>
> The "State action exemption" for which provision is made by this Section shall be liberally construed in favor of local governments, the agents, employees, and officers thereof . . . .
>
> . . . It is the intention of the General Assembly that the "State action exemption" to the application of federal antitrust statutes be fully available to any such Sanitary

> District, its officers, agent and employees to the extent they are exercising authority pursuant to law.

50 ILCS 35/1.

With these principles in mind, it is clear that Plaintiff, in his third amended complaint, fails to meet the minimal pleading standards laid out in Fed. R. Civ. P. 8(a)(2) to support an antitrust claim. *See Twombly*, 127 S. Ct. 1955, at *1966. First, Plaintiff fails to identify which provisions of the antitrust laws the Town has allegedly violated. He mentions that the Town has a monopoly over the water supply, but he does not allege anticompetitive action by the Town. His major complaints are that the Town charges minimum monthly fees on two water meters (the main water meter and a fire sprinkler meter) and that the Town charges a late fee of approximately 33 percent. Second, he asserts that "charging a usurious interest rate" violates "various state and federal laws" and "the covenant of good-faith and fair-dealing inherent in these transactions," without citing any actual state or federal laws that the Town may have violated. Finally, he incorrectly alleges that it was violative of the Clayton Act to "illegally tie-in extra meters, minimum usage charges, usurious late charges, and sewer charges to the basic supply of water."

Plaintiff's bare assertions are belied by both 65 ILCS 5/11-125-3, which expressly grants local governments the power to "make all needful rules and regulations concerning the use of water supplied by the waterworks of the city or village" and to fix and collect such water rates "as the corporate authorities may deem necessary or expedient," and
50 ILCS 35/1, which exempts local governments from federal antitrust laws "to the extent their activities are either (1) expressly or by necessary implication authorized by Illinois law or (2) within traditional areas of local government activity." Therefore, because the facts stated in

Plaintiff's complaint, even if true, do not give rise to a claim of entitlement to relief, this count is dismissed now, "

at the point of minimum expenditure of time and money by the parties and the court.'" *See Twombly*, 127 S. Ct. 1955, at * 1967.

## V.   *Punitive Damages*

In Count I, Plaintiff seeks $3 million in punitive damages against Defendants, jointly and severally.  Because we are dismissing all counts of Plaintiff's complaint, his claim for punitive damages fails.  Additionally, the Town properly asserts that punitive damages are not permitted against local public entities in Illinois. 745 ILCS 10/2-102.  Section 2-102 of the Illinois Code specifically states: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102.  Accordingly, Defendants' motion to dismiss Plaintiff's punitive damages request is **granted**.

## VI.   *Claim for Injunctive Relief*

In Count IV, Plaintiff seeks injunctive relief and requests that the court appoint a receiver to oversee the collections and expenditures of the Town's Water and Business Licensing departments.  A receiver is an impartial person appointed by the court to "receive the rents, issues, or profits of land, or other thing in question in this court, pending the suit, where it does not seem reasonable to the court that either party should do it."  *Booth v. Clark*, 58 U.S. 322, 331 (1855).  Modernly, "[t]he general task of a receiver is to 'assume[] control over, take[] custody of, or manage[] property that is involved or likely to become involved in litigation. The receiver conserves the property by taking appropriate actions pending the final outcome of the suit.'"

*CFTC v. Eustace*, 2005 U.S. Dist. LEXIS 40247, at *4 n.1 (E.D. Pa. Dec. 29, 2005) (internal citation omitted).

In this case, we are dismissing Counts I, II, and III of Plaintiff's third amended complaint for failure to state a claim. As a result, Plaintiff's request to appoint a receiver to oversee the Town's water and business licensing departments is moot. There is no litigation pending, thus there is no property "involved or likely to become involved in litigation" for a receiver to oversee. *See CFTC*, 2005 U.S. Dist. LEXIS 40247, at *4 n.1.

## CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss [60-2] is granted. Defendants' motions to strike [57, 74] are denied as moot. This case is hereby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Dated: October 10, 2007